UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DR. GERALD R. FINKEL, as Chairman of the Joint
Industry Board of the Electrical Industry,

                                Petitioner,

    -against-

FIREQUENCH, INC.,

                                Respondent.

------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

23-CV-4868
(Komitee, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

       Petitioner Dr. Gerald R. Finkel, as Chairman of the Joint Industry Board of the Electrical Industry ("Petitioner" or "JIB"), commenced this proceeding, pursuant to Section 502(g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking to confirm and enforce an arbitration award ("Award") rendered pursuant to the terms of a collective bargaining agreement between JIB and Respondent Firequench, Inc. ("Respondent"). *See* Dkt. No. 1; Dkt. No. 1-6. In addition to confirming the Award, Petitioner also seeks post-judgment interest and an award of its attorneys' fees and costs incurred in connection with this proceeding. *See* Dkt. No. 1 ¶¶ 43-51. To date, Respondent has neither appeared in this proceeding nor otherwise challenged the Award.

       Currently pending before this Court, upon referral from the Honorable Eric R. Komitee, United States District Judge, is Petitioner's petition to confirm the arbitration award ("Petition").

*See* Dkt. Nos. 1, 11; *see also* Sept. 7, 2023 Order; Sept. 26, 2023 Referral Order.[1] On September 26, 2023, the Court granted Petitioner's request to treat the Petition as an unopposed motion for summary judgment. *See* Sept. 26, 2023 Order ("The Court will treat the petition to confirm the arbitration award as an unopposed motion for summary judgment. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)."). For the reasons set forth below, this Court respectfully recommends that Petitioner's motion be granted in part.

I. **Background**

    A. **Factual Background**

"The follow[ing] facts are taken from the Petition and exhibits thereto and presumed true as no response to the petition has been filed and the time in which to do so has expired." *Trustees of the Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab.-Mgmt. Cooperation Funds v. Countrywide Home Improvement, Inc.*, No. 17-CV-2570 (DRH) (ARL), 2017 WL 5690922, at *1 (E.D.N.Y. Nov. 27, 2017).

JIB is the administrator of various employee benefit plans established and maintained pursuant to collective bargaining agreements between the Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union) and employers in the electrical industry and other related industries. *See* Dkt. No. 1 ¶ 4. JIB is an administrator and fiduciary within the meaning of Sections 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A)(i) and 1002(21)(A). *Id.* ¶ 5.

---

[1] The referral was made to then-United States Magistrate Judge Ramon E. Reyes, Jr. Upon Judge Reyes's appointment as a United States District Judge, the matter was re-assigned to the undersigned. *See* Nov. 13, 2023 Dkt. Entry.

Respondent is a New York limited liability company[2] and a member of the New York System Suppliers Association (the "Association"). *Id.* ¶¶ 13, 16. As a member of the Association, Respondent is bound to a collective bargaining agreement entered into between the Union and the Association, which covered the period of March 10, 2018 through March 11, 2022 (the "CBA").[3] *See id.* ¶¶ 17-18; Dkt. No. 1-1, Art. 20 § 3; Dkt. No. 1-1, at 24. At all relevant times, Respondent was an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5) and an "employer" in an "industry affecting commerce" within the meaning of Sections 301(a) and 501 of the LMRA, 29 U.S.C. §§ 142, 185(a). *See* Dkt. No. 1 ¶ 13.

The CBA requires employers to, *inter alia*, remit contributions to JIB for various employee benefit plans (the "Plans"). *Id.* ¶ 23; Dkt. No. 1-1, Art. 11 §§ 3-8. The CBA further provides that (1) "the parties . . . agree to . . . be bound by the . . . delinquency and collection procedures of the [p]lan and the requirements of ERISA" and that (2) "an employer shall be liable for the remedies under Section 502(g)(2) of ERISA, including liquidated damages in an amount not in excess of 20%, in the event of entry of judgment against the [e]mployer in an action to collect delinquent contributions." Dkt. No. 1-1, Art. 11 § 9.

JIB's "Policy for the Collection of Delinquent Contributions" (the "Collection Policy") provides: (1) if "an employer fails to remit Contributions and has not submitted payroll reports for

---

[2] The Petition names "Firequench, Inc." as the Respondent but later alleges that Respondent is a limited liability company. *See* Dkt. No. 1 ¶ 13. Based upon this Court's review of the New York Secretary of State's Corporation and Business Entity Database, Respondent is registered as a domestic corporation. *See N.Y. Dep't of State, Div. of Corps., Corporation & Business Entity Database Search*, https://apps.dos.ny.gov/publicInquiry (last visited Jan. 28, 2024); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704, at *6 (E.D.N.Y. Dec. 22, 2023) (taking judicial notice of the New York Secretary of State's Business Entity Database).

[3] The CBA states that it shall remain in effect until March 11, 2022 "and from year to year thereafter" unless the Association or Union terminates the agreement by providing notice in accordance with the requirements set forth therein. Dkt. No. 1 ¶ 19; Dkt. 1-1, Art. 20 § 1. According to Petitioner, neither the Union, the Association, nor Respondent have provided notice to terminate the CBA, and it therefore remains in effect. *See* Dkt. No. 1 ¶¶ 20-21.

3

such unpaid Contributions, the [JIB] may use a prior week's payroll report submitted by the employer to calculate the amount of Contributions due from the employer"; (2) the interest rate for delinquent contributions is to be calculated at the rate set forth in Section 6621 of the Internal Revenue Code; and (3) an employer shall be liable for liquidated damages and attorneys' fees and costs if legal action is commenced. *See* Dkt. No. 1-2, Art. II §§ D, E, F.

The CBA also includes a mandatory arbitration clause that requires all disputes regarding the "meaning, application[,] or operation" of the CBA to be submitted to arbitration. *See* Dkt. No. 1-1, Art. 18 § 1. JIB's Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits ("Arbitration Procedures") apply to such arbitrations. *See* Dkt. No. 1-3 § II.A. Per the Arbitration Procedures, a JIB-appointed neutral arbitrator shall have the jurisdiction to determine disputes between JIB and an employer regarding an "[e]employer's obligation to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorneys' fees and costs . . . ." Dkt. No.1 ¶ 30; Dkt. No. 1-3 §§ I.K and II.A. The Arbitration Procedures further provide that if the arbitrator finds in whole or in part for JIB, the employer shall be liable for the arbitrator's fees and attorneys' fees and costs. Dkt. No. 1-3 § X.B.

Petitioner claims that, from December 30, 2020 through August 3, 2022, Respondent failed to comply with its obligations to make contribution payments. Dkt. No. 1 ¶ 32. Pursuant to the CBA, Collection Policy, and Arbitration Procedures, Petitioner initiated an arbitration against Respondent, seeking relief pursuant to Sections 404, 409, 502, and 515 of ERISA (29 U.S.C. §§ 1104, 1109, 1132, and 1145) and to collect various other sums due to JIB in accordance with the terms of the CBA pursuant to Section 301 of the LMRA, 29. U.S.C. 185. *See* Dkt. No. 1 ¶ 33; Dkt. No. 1-6. A neutral arbitrator was assigned to hear the dispute. *See* Dkt. No. 1 ¶ 33.

4

In accordance with the Arbitration Procedures, Petitioner noticed the arbitration by sending a Notice of Intent to Arbitrate with Statement of Claims by e-mail to Respondent. *See* Dkt. No. 1 ¶ 34; Dkt. No. 1-4. On September 15, 2022, Petitioner served Respondent, via e-mail, with Petitioner's Pre-Hearing Memorandum of Law. Dkt. No. 1 ¶ 34. On October 26, 2022, the arbitrator held a hearing on Zoom. *Id.* ¶ 35. Petitioner appeared at the hearing by counsel, and Respondent had a representative appear on its behalf. *See id.* ¶ 35; Dkt. No. 1-6, at 1.

At the hearing, Petitioner presented evidence that Respondent failed to make weekly contributions to the Plans for the period of December 30, 2020 through October 19, 2022 in violation of the CBA, ERISA, and the LMRA. *See* Dkt. No. 1-6, at 4-5. Petitioner supported its claim for damages with a spreadsheet evidencing the contributions owed, interest accrued, and liquidated damages. *See* Dkt. No. 1-5; Dkt. No. 1-6, at 4-5. Respondent did not contest the amounts owed or submit any evidence to rebut Petitioner's arguments. *See* Dkt. No. 1-6, at 1, 5.

By written Award dated October 31, 2022, the arbitrator found that Petitioner had proven, by a preponderance of the evidence, that contributions were due and owing by Respondent and ordered Respondent to pay Petitioner $107,849.71, comprising: (1) unpaid contributions in the amount of $77,784.68 for the period of December 30, 2022 through October 19, 2022; (2) interest in the amount of $3,701.65; (3) additional shortages and underpayments in the amount of $4,213.70; (4) liquidated damages in the amount of $16,399.68; (5) legal fees and costs in the amount of $4,350.00; and (6) an arbitrator's fee in the amount of $1,400.00. Dkt. No. 1 ¶¶ 36, 38; Dkt. 1-6, at 5-6.

Respondent has not abided by the Award. Dkt. No. 1 ¶ 40. According to Petitioner, Respondent "has paid and reported several weeks" of the Award but, as of June 29, 2023 (the date of the Petition), a total of $40,506.07 remains outstanding on the Award. *Id.* This amount consists

of: (1) reported but unpaid contributions in the amount of $11,603.44 for the period covering August 31, 2022 through October 19, 2022; (2) interest in the amount of $3,701.65; (3) additional shortages and underpayments in the amount of $3,051.30; (4) liquidated damages in the amount of $16,399.68; (5) legal fees and costs in the amount of $4,350.00; and (6) and the $1,400.00 arbitrator's fee. *Id.* The Award has not been vacated or modified, and Respondent has not applied for such relief. *Id.* ¶ 41.

### B. Procedural History

Petitioner filed the instant Petition on June 29, 2023. Dkt. No. 1. Petitioner served Respondent with the Summons and Petition on July 3, 2023 by leaving a copy with Respondent's general agent at Respondent's principal place of business. *See* Dkt. No. 8; *see also* Dkt. No. 1 ¶ 13. Despite proper service, Respondent has not opposed the Petition or otherwise appeared in this proceeding. On July 25, 2023, Petitioner sought a certificate of default against Respondent (Dkt. No. 9), which the Clerk of Court granted on August 3, 2023 (Dkt. No. 10). On September 7, 2023, Petitioner filed a letter requesting that the Court deem the Petition unopposed and review it as a motion to confirm the Award. *See* Dkt. No. 11.

On September 26, 2023, the Court granted Petitioner's request and indicated that the Court will treat the Petition as an unopposed motion for summary judgment. *See* Sept. 26, 2023 Order (citing *D.H. Blair*, 462 F.3d at 109). Petitioner served Respondent with a copy of the order by first-class and electronic mail on September 26, 2023. Dkt. No. 12.

## II. Legal Standard for Confirmation of Arbitration Award

Arbitration awards are not self-enforcing and must "be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part." *D.H. Blair*, 462 F.3d at 104. "Inasmuch as a petition to confirm an arbitration

6

award typically is accompanied by a record, courts treat an unanswered petition to confirm an arbitration award 'as an unopposed motion for summary judgment.'"[4]  *Countrywide Home Improvement*, 2017 WL 5690922, at *2 (citing *D.H. Blair*, 462 F.3d at 109-10); *see Finkel v. High Volt Elec. Corp. of Am.*, No. 20-CV-4315 (AMD) (RER), 2021 WL 3934141, at *2 (E.D.N.Y. July 7, 2021) (applying summary judgment standard to petition), *report and recommendation adopted*, 2021 WL 3931349 (E.D.N.Y. Sept. 1, 2021).

Fed. R. Civ. P. 56(a) provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the burden of showing that no genuine factual dispute exists.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Where, as here, the summary judgment motion is unopposed, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."  *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed."  *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (citing *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

---

[4] Local Civil Rule 56.1(a) requires that, "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement may constitute grounds for denial of the motion."  But as the Court has already granted Petitioner's request to treat the Petition as an unopposed motion for summary judgment, the undersigned submits that a Local Civil Rule 56.1. statement is not required under these circumstances.  *See Countrywide Home Improvement*, 2017 WL 5690922, at *3 (granting petition as an unopposed motion for summary judgment even though no Local Civil 56.1 statement was filed).

"In doing so, the court may rely on other evidence in the record even if uncited." *Id.* (citing Fed. R. Civ. P. 56(c)(3)).

Although courts apply a summary judgment standard to arbitration confirmation proceedings, "[a] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *A&A Maint. Enter., Inc. v. Ramnarain*, 982 F.3d 864, 868 (2d Cir. 2020) (quoting *New York City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of New York, Inc.*, 826 F.3d 611, 618 (2d Cir. 2016)).

Confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co.*, 462 F.3d at 110 (quotation marks and citation omitted). The arbitrator's rationale need not be explained, and the Court should confirm the award "if a ground for the arbitrator's decision can be inferred from the facts of the case." *Id.* (quotation marks and citation omitted). Indeed, only "a barely colorable justification for the outcome reached" is necessary to confirm the award. *Id.* In the specific context of awards issued pursuant to collective bargaining agreements, the Supreme Court has instructed that "[a]s long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

Accordingly, "courts 'play only a limited role when asked to review the decision of an arbitrator.'" *Tully Constr. Co. v. Canam Steel Corp.*, 684 F. App'x 24, 26 (2d Cir. 2017) (quoting *Misco, Inc.*, 484 U.S. at 36).

8

## III. <u>Confirmation of the Award</u>

Upon review of the uncontroverted evidence submitted with the Petition and in light of the foregoing case law, this Court finds that Petitioner has met its burden of demonstrating that there is no genuine issue of material fact precluding the Court from confirming the Award.

First, the CBA and its incorporated policies contain a clear agreement to arbitrate a dispute of this type involving unpaid contributions to employee benefit funds. *See* Dkt. No. 1-1, Art. 18 § 1. Second, the Award "draws its essence" from the CBA, and has, at a minimum, "a barely colorable justification." *D.H. Blair & Co.*, 462 F.3d at 110; *see also Misco*, 484 U.S. at 36. The evidence submitted by Petitioner at the arbitration hearing established that Respondent agreed to be bound by the CBA, Collection Policy, and Arbitration Procedures during the relevant time period. *See* Dkt. No. 1 ¶¶ 17-18, 24, 26-27; Dkt. No. 1-6, at 3. The evidence further established that the CBA required Respondent to make weekly contributions to the Plans, but that Respondent failed to remit such contributions during the period of December 30, 2020 through October 19, 2022. *See* Dkt. No. 1 ¶ 36; Dkt. No. 1-1, Art. 11 §§ 3-8.; Dkt. No. 1-6, at 4-5. Petitioner supported its claim for damages with a spreadsheet evidencing the contributions owed, interest accrued, and liquidated damages. *See* Dkt. No. 1-5, at 47-49; Dkt. No. 1-6, at 8-10. Respondent appeared at the hearing but did not contest the amounts owed or submit evidence to rebut Petitioner's claims. *See* Dkt. No. 1-6, at 1, 5.

Based on Petitioner's evidence and Respondent's lack of rebuttal evidence, the arbitrator determined that Petitioner proved by a preponderance of the evidence that Respondent was required to remit the contributions owed and failed to remit such contributions. *Id.* at 5. As a result, the arbitrator ordered Respondent to pay Petitioner $107,849.71, consisting of the delinquent contributions, interest, shortages and underpayments, liquidated damages, legal fees

9

and costs, and arbitrator's fee. *Id.* at 5-6.  The CBA, Collection Policy, and Arbitration Procedures authorize the arbitrator to grant these remedies.  *See* Dkt. No. 1-1, Art. 11 § 9; Dkt. No. 1-2 § II.E.2; Dkt. No. 1-3 § X.B; *see also Finkel v. Lintech Elec., Inc.*, No. 18-CV-6865 (MKB), 2021 WL 25354, at *4 (E.D.N.Y. Jan. 4, 2021) (confirming arbitration award where the remedies awarded by the arbitrator were authorized by the collective bargaining agreement, Collection Policy, and Arbitration Procedures); *Trustees of NYC Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Bilt NYG, Inc.*, No. 20-CV-03846 (VSB) (SN), 2020 WL 7211184, at *3 (S.D.N.Y. Nov. 19, 2020) (recommending confirmation of arbitration award where "the amount and categories of damages awarded by the arbitrator correspond generally to those contemplated in the [collective bargaining agreement] and employer contribution policy—including principal and liquidated damages, interest, and [attorneys'] fees and costs"), *report and recommendation adopted*, 2020 WL 7183549 (S.D.N.Y. Dec. 7, 2020).  As Petitioner notes, as of June 29, 2023 (the date of the Petition), a total of $40,506.07 remains outstanding on the Award.  Dkt. No. 1 ¶ 40.

For these reasons, this Court finds that the Award "draws its essence" from the CBA and has "a barely colorable justification."  *D.H. Blair & Co.*, 462 F.3d at 110; *see Misco*, 484 U.S. at 36.  Accordingly, this Court respectfully recommends that the arbitrator's decision is upheld and the Award is confirmed.

IV. **Prejudgment and Post-Judgment Interest**

    A. **Prejudgment Interest**

Under ERISA, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1332(g)(2); *see also Countrywide Home Improvement*, 2017 WL 5690922, at *2.  Here, the

Collection Policy provides that interest on unpaid contributions "shall be calculated at the rate set forth in Section 6621 of the Internal Revenue Code." Dkt. No. 1-2, Art. II § E. Under 26 U.S.C. § 6621, the pre-judgment interest rate is the sum of the Federal short term-rate (which changes quarterly) plus three percentage points. *See* 26 U.S.C. § 6621(a)(2), (b)(1). In addition, such interest is to be compounded daily. *See* 26 U.S.C. § 6622(a).

Here, Petitioner does not request prejudgment interest in the Petition or the proposed form of judgment submitted with the Petition. *See* Dkt. Nos. 1, 1-8. The only substantive reference to interest in the Petition is Petitioner's request that Respondent re-pay the $3,701.65 in interest as part of the Award, as set forth above. *See* Dkt. No. 1 ¶ 40.

Accordingly, this Court respectfully recommends that Petitioner is not awarded prejudgment interest, separate and apart from the interest that is already included in the Award. *See Team Air Express, Inc. v. A. Heffco Techs., Inc.*, No. 06 CV 2742 (NG), 2008 WL 4790464, at *1 (E.D.N.Y. Sept. 3, 2008) ("it is respectfully recommended that in the absence of a specific request, plaintiff not be awarded prejudgment interest"), *report and recommendation adopted*, 2008 WL 4790460 (E.D.N.Y. Oct. 28, 2008); *cf. Countrywide Home Improvement*, 2017 WL 5690922, at *2 ("[W]hen interest is accruing during the pendency of the action and *it is explicitly requested in the complaint*, such interest will be awarded") (emphasis added).

**B.     Post-Judgment Interest**

Petitioner likewise does not expressly request post-judgment interest in the Petition. Petitioner's proposed form of judgment, however, includes an award of "post-judgment interest at the statutory rate." *See* Dkt. Nos. 1, 1-8.

The Second Circuit has held that an award of post-judgment interest is "mandatory" and should be awarded at the statutory rate prescribed by 28 U.S.C. § 1961(a). *See Westinghouse*

11

*Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004); *see also Lewis v. Whelan*, 99 F.3d 542, 546 (2d Cir. 1996) (affirming award of post-judgment interest in a confirmation proceeding); *Trustees of the New York City Dist. Council of Carpenters Pension Fund v. Golden Dev. & Constr. Corp.*, No. 17-CV-1051 (VSB) (JLC), 2017 WL 2876644, at *6 (S.D.N.Y. July 6, 2017) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered, including orders that confirm arbitration awards.") (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 3309737 (S.D.N.Y. Aug. 2, 2017).

Despite Petitioner's failure to request post-judgment interest in the Petition, this Court nonetheless finds that Petitioner is entitled to post-judgment interest as a matter of right. *See Indu Craft, Inc. v. Bank of Baroda*, 87 F.3d 614, 619 (2d Cir. 1996) (holding that a prevailing party is entitled to post-judgment interest as a matter of right); *see also Lei v. A & C Seafood Int'l Grp. Corp.*, No. 21-CV-03471 (OEM) (SJB), 2023 WL 8828839, at *2 (E.D.N.Y. Dec. 21, 2023) ("An 'award of post-judgment interest is mandatory.'") (citing *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008)).

Consequently, this Court respectfully recommends that Petitioner be awarded post-judgment interest on any judgment issued by the Court, from the date of entry of the judgment to the date when the judgment is satisfied, at the rate provided for by 28 U.S.C. § 1961.

### V.   Petitioner's Attorneys' Fees and Costs

#### A.   Attorneys' Fees

Petitioner also seeks an award of attorneys' fees in the amount of $527.00 reflecting 1.7 hours of work performed in connection with this proceeding. *See* Dkt. No. 1 ¶¶ 43-51.

Under Section 502 of ERISA, parties are entitled to reasonable attorneys' fees and costs incurred in an action initiated to recover delinquent contributions pursuant to a collective

12

bargaining agreement. 29 U.S.C. § 1132(g)(2)(D). "Although that entitlement does not necessarily extend to petitions to confirm arbitration awards, courts tend to award fees when respondents refuse to abide by an arbitrator's decision without justification." *Finkel v. IDL Commc'n & Elec., Inc.*, No. 22-CV-5889 (NRM) (RML), 2023 WL 4565403, at *4 (E.D.N.Y. June 20, 2023) (quotations, citation, and brackets omitted), *report and recommendation adopted*, 2023 WL 4564911 (E.D.N.Y. July 17, 2023); *see Finkel v. Millennium Fire Servs., LLC*, No. 22-CV-6225 (RPK) (RML), 2023 WL 3620615, at *5 (E.D.N.Y. Apr. 6, 2023) (awarding fees incurred in connection with confirmation proceeding); *Finkel v. JCF Elec., Inc.*, No. 21-CV-03161 (CBA) (RER), 2022 WL 3682834, at *4 (E.D.N.Y. Aug. 25, 2022) (same). In addition, Petitioner is entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to the Collection Policy and the Award. *See* Dkt. No. 1 ¶ 43; Dkt. No. 1-2, Art. I § 2; Dkt. No. 1-6, at 5.

In assessing whether legal fees are reasonable, a court must determine the "presumptively reasonable fee" for an attorney's services by examining what a reasonable client would be willing to pay. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008). To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. *Id.* The next step is to determine the reasonableness of the hours expended by counsel. *See, e.g.*, *Labarbera v. Empire State Trucking, Inc.*, No. 07-CV-669 (SJ) (RML), 2008 WL 746490, at *4 (E.D.N.Y. Mar. 19, 2008). "The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011) (quotation marks and citation omitted). The number of hours spent on a lawsuit are considered unreasonable if they are "excessive, redundant, or otherwise unnecessary." *Labarbera*

13

*v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387 (SJ) (JMA), 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). "Claims for attorneys' fees in the Second Circuit generally must be supported by contemporaneous time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *IDL Commc'n & Elec*, 2023 WL 4565403, at *4 (quotation marks and citation omitted).

As an initial matter, this Court concludes that the invoice printout provided by Petitioner satisfies the contemporaneous records requirement. *See* Dkt. No. 1-7. "Courts accept the printout of an invoice that provides a clear description of the work performed, the time spent on the respective matter, the attorney who rendered services, and the date the services were performed." *Trustees of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. CEI Contractors, Inc.*, No. 18-CV-3467 (JFB) (GRB), 2019 WL 117603, at *6 (E.D.N.Y. Jan. 7, 2019) (quotation marks and citation omitted). The invoice submitted by Petitioner provides this information in sufficient detail, as it includes a description of the work performed, the initials of the individual who performed the work, the dates on which the work was performed, and the amount of time spent on the various projects. Dkt. No. 1 ¶ 44; Dkt. No. 1-7. In addition, Petitioner's counsel, Ms. Moosnick, avers that the invoice is a contemporaneous time record. Dkt. No. 1 ¶ 44.

Turning next to the reasonable hourly rate, the Court examines the experience and qualifications of counsel seeking the fee award.[5] Ms. Moosnick's hourly billing rate is $310.00. Dkt. No. 1 ¶ 45. She is a 2021 graduate of Fordham University School of Law and an associate at Virginia & Ambinder, LLP. *Id*. Ms. Moosnick's primary practice area is the representation of

---

[5] Petitioner claims that Virginia & Ambinder, LLP billed legal assistant time at a rate of $155 per hour, but no such time is reflected on the invoice submitted by Petitioner. *See* Dkt. No. 1 ¶ 46; Dkt. No. 1-7.

14

multiemployer benefit plans in ERISA litigation, and she routinely handles petitions to confirm arbitration awards. *Id.*

In ERISA confirmation proceedings "[i]n this district, the prevailing hourly rates are generally $200 to $450 for partners in law firms, $200 to $325 for senior associates, [and] $100 to $200 for junior associates." *IDL Commc'n & Elec*, 2023 WL 4565403, at *4 (quoting *Noboa v. Quality Homes USA, Inc.*, No. 21-CV-07134 (JMA) (LGD), 2023 WL 35030, at *2 (E.D.N.Y. Jan. 4, 2023). Courts typically award hourly rates of $200-$250 for attorneys with more years of experience than Ms. Moosnick. *See e.g.*, *Finkel v. J&H Elec. Contracting, Inc.*, No. 22-CV-4293 (MKB), 2023 WL 3948752, at *6 (E.D.N.Y. June 12, 2023) (reducing rate of $290 to $250 for associate who graduated in 2016 and had three years of ERISA litigation experience); *Ally Fin. Inc. v. Comfort Auto Grp. NY LLC*, No. 20-CV-1281 (MKB) (RLM), 2022 WL 3703955, at *18 (E.D.N.Y. Aug. 26, 2022) (recommending $250 hourly rate for associate with seven years' experience), *report and recommendation adopted*, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022); *Trustees of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Cooperation Funds v. CEI Contractors, Inc.*, No. 18-CV-3467 (JFB) (GRB), 2019 WL 117603, at *6 (E.D.N.Y. Jan. 7, 2019) (reducing the hourly rate for associate who graduated four years prior from $265 to $200). Indeed, Courts in this district have, within the last year, reduced Ms. Moosnick's rate to $200 per hour. *See IDL Commc'n & Elec.*, 2023 WL 4565403, at *4 ("Ms. Moosnick's requested rate is high for a second-year associate. I respectfully recommend reducing Ms. Moosnick's rate to $200 per hour"); *Millennium Fire Servs.*, 2023 WL 3620615, at *5 (same).

Based on the foregoing, this Court finds that Ms. Moosnick's hourly rate of $310.00 is high and respectfully recommends that her hourly rate be reduced to $200.00.

15

Finally, turning to the reasonableness of the time expended, according to the billing records submitted, Ms. Moosnick spent 1.7 hours drafting and filing the Petition and the letter requesting that the Court deem the Petition unopposed and review it as a motion to confirm the Award. *See* Dkt. No. 1 ¶ 48; Dkt. No. 1-7. These hours are within the range of hours expended in similar cases. *See, e.g.*, *J&H Elec. Contracting*, 2023 WL 3948752, at *6 (finding 2.5 hours billed to be reasonable); *IDL Commc'n & Elec.*, 2023 WL 4565403, at *5 (finding 3.2 hours billed to be reasonable); *Millennium Fire Servs.*, 2023 WL 3620615, at *5 (finding 4.1 hours billed to be reasonable). Accordingly, this Court finds that the 1.7 hours billed is reasonable.

Applying the reduced rate enumerated above to the 1.7 hours billed results in attorneys' fees totaling $340.00. Accordingly, this Court respectfully recommends that Petitioner be awarded $340.00 for its attorneys' fees.

### B. Costs

Petitioner also seeks an award of costs in the amount of $477.00, which consists of court filing fees, research fees, and service charges. Dkt. No. 1 ¶ 49.

ERISA provides for the recovery of costs associated with litigation commenced to recover unpaid fringe benefit contributions. *See* 29 U.S.C. § 1132(g)(2)(D). "[C]ourts routinely make awards for costs pursuant to ERISA in confirmation proceedings." *Loc. 363, United Elec. Workers of Am., Int'l Union of Journeymen & Allied Trades v. Laser Lite Elec., Inc.*, No. 17-CV-0267 (DLI) (SMG), 2017 WL 9939041, at *6 (E.D.N.Y. Nov. 9, 2017) (quoting *Abondolo v. Jerry WWHS Co.*, 829 F. Supp. 2d 120, 130 (E.D.N.Y. 2011)); *see also* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."). "The party requesting reimbursement of its costs, however, must provide the court with adequate documentation not only showing costs were incurred, but

16

that they were paid." *Finkel v. KLK Elec., Inc.*, No. 19-CV-04945 (NG) (SJB), 2020 WL 3885739, at *4 (E.D.N.Y. June 25, 2020) (quotation marks and citation omitted). Only those costs that are tied to "'identifiable, out-of-pocket disbursements'" are recoverable. *Moon v. Gab Kwon*, No. 99-CV-11810 (GEL), 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987)).

Here, Petitioner seeks $477.00 in costs but provides no documentation to establish that such costs were incurred and paid. Without such backup documentation, Petitioner is not entitled to an award of costs except for the $402 filing fee, which is recoverable because the docket indicates the filing fee was paid. *See* June 29, 2023 Dkt. Entry; *see also Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920 (KAM) (VMS), 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (holding that filing fees are recoverable without supporting documentation if verified by the docket). Accordingly, this Court respectfully recommends that Petitioner be awarded costs in the amount of $402.00.

### VI. Conclusion

For the reasons stated, this Court respectfully recommends that the Award be confirmed and that Petitioner's motion be granted in part. This Court respectfully recommends that Respondent be ordered to pay Petitioner the total remaining award amount of $40,506.07, consisting of: (1) reported but unpaid contributions in the amount of $11,603.44; (2) interest in the amount of $3,701.65; (3) additional shortages and underpayments in the amount of $3,051.30; (4) liquidated damages in the amount of $16,399.68; (5) legal fees and costs in the amount of $4,350.00; and (6) and the arbitrator's fee in the amount of $1,400.00. This Court further respectfully recommends that Petitioner be awarded post-judgment interest in accordance with 28

U.S.C. § 1961.  Finally, this Court respectfully recommends that Respondent be ordered to pay Petitioner $742.00 for the attorneys' fees and costs it incurred in connection with this proceeding.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Petitioner's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Respondent and to file proof of service on ECF on or before January 30, 2024.

Copies shall be served at the following addresses:

Firequench, Inc.
38 East 32nd Street, 10th Floor
New York, New York 10016

Firequench, Inc.
39 West 37th Street, 8th floor
New York, New York 10018

*See* Dkt. No. 1 ¶¶ 13, 14.  Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Komitee.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: Brooklyn, New York
January 29, 2024

*/s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge